IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOLORES ESTRADA; TINA DUNCAN; )
MANUEL ESTRADA, JR.; DAVID ESTRADA )
ARLENE GREEN AND DOLORES ESTRADA )
AS SUCCESSOR IN INTEREST OF THE )
ESTATE OF MANUEL ESTRADA, SR., )
                                        )    2:05-cv-927-GEB-EFB
            Plaintiffs, )
                                        )
   v.                                  )    <u>In Limine Ruling on</u>
                                        )    <u>Plaintiffs' Liability</u>
GENIE INDUSTRIES, INC., a         )    <u>Experts' Opinions</u>[*]
Washington Corporation; UNITED )
RENTALS, INC., a Delaware )
Corporation, )
                                          )
            Defendants. )

        Defendant Genie Industries, Inc. ("Defendant") moves under <u>Daubert</u>[1] and Federal Rule of Evidence ("FRE") 702 for an order excluding the testimony of Plaintiffs' liability experts, David V. MacCollum ("MacCollum") and Gerald R. Fulghum ("Fulghum"). (Def.'s

---

[*]    This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

[1]    <u>Daubert v. Merrel Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

1

Mot. to Exclude Expert Test. ("Mot.") at 2:7.) Plaintiffs oppose the motion.[2]

## Background

This is a wrongful death action arising out of a fatal accident which occurred when Manuel Estrada ("Estrada") was operating an aerial lift that Defendant designed and manufactured. (FPO at 2:12-13.) Plaintiffs are Estrada's surviving wife and four adult children. (Id. at 2:17-18.) Estrada was found pinned between the control panel of the aerial lift and an overhead cable tray.[3] There were no witnesses to the accident. (Id. at 2:15).

Defendant asserts that MacCollum puts forth the following liability theories: "there is a problem with the design of the lift's controls, which allows an operator to inadvertently activate the controls if he leans over the control panel[;]" "the lift should be equipped with some sort of bar over the control panel[;] and [] the toggle switches should be designed such that they resemble those used by some automobile manufacturers." (Mot. at 5:2-6.) Defendant asserts that Fulghum's liability theories are that "the controls on the lift are defective" and "that the controls on the boom lift should be placed in a different position or that there should be a guard over

---

[2] Plaintiffs contend that Defendant's motion is untimely because it was not filed before the Rule 16 law and motion deadline. (Opp'n at 2:10-15.) However, that deadline does not apply to Defendant's evidentiary motion which is an in limine motion authorized by the Final Pretrial Order. (See Final Pretrial Order ("FPO") at 8:11-13.)

[3] Defendant states that Estrada "was found pinned between the lift's platform railing and a cable tray attached to the ceiling." (Mot. at 1:23-24.) Plaintiffs supports their position that Estrada was found "pinned between the control panel of the aerial lift" and the cable tray with deposition testimony. (Pls.' Opp'n to Mot. and Supporting Evidence ("Opp'n") at 1:26-27.) Therefore, Plaintiffs' position is credited for purposes of this motion.

2

1  the controls." (Id. at 6:5-6.)  With respect to the positioning of
2  the control panel, "Fulghum opines that the control should be
3  positioned in such a way that the operator has maximum mobility and
4  visibility" and that "the controls should be moveable or swing out."
5  (Id. at 6:7-9, 11.)  Finally, Defendant states that Fulghum "further
6  opines that the foot switch should be positioned at a 45-degree
7  angle."[4]  (Id. at 6:12-13.)

## Discussion

Under Federal Rule of Evidence 702, "admission of 'scientific, technical, or other specialized knowledge' by a qualified expert [is permitted] if it will 'assist the trier of fact to understand the evidence or determine a fact in issue.'"  Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002).  "The Supreme Court has defined the role of the district court as that of a gatekeeper charged with the task of deciding whether an expert's scientific testimony satisfies Rule 702's general requirements of reliability and relevance."  Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 69 (S.D.N.Y. 2001) (citing Daubert, 509 U.S. at 597).  Further, FRE 702 "incorporate[s] Daubert's formulation of the gatekeeping task: the district court must make certain that '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'"  Id. (citing FRE 702).

> Daubert provid[es] a non-exclusive list of factors for determining whether expert testimony is

---

[4] This Order is limited to the aforementioned theories of liability, as stated in Defendant's Motion.  (See Mot. at 5:2-7, 6:5-15.)

3

>sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community.

Mukhtar, 299 F.3d at 1064 (citing Daubert, 509 U.S. at 593-94, Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)).  "Although the focus of the overall inquiry must be on principles and methodology and not on conclusions, 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" Colon ex rel. Molina, 199 F. Supp. 2d at 69 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

I. Causation

      Defendant argues that MacCollum and Fulghum's opinions should be excluded because their "hypotheses are based on speculation and conjecture."  (Mot. at 2:24.)  Defendant further contends that "[e]xpert testimony that is offered to prove causation is not relevant if the proposed expert can only offer possibilities not probabilities."  (Id. at 9:13-14, 12:11-12.)  Plaintiffs counter that "even if there is uncertainty as to exactly how the incident occurred," their experts can give the challenged opinions because of the circumstantial evidence of "Estrada [having been] found pinned between the control panel and the overhead cable tray . . . ."  (Id. at 14:8-10.)  Plaintiffs argue that "even in unwitnessed accidents, causation is established where it is based on permissible inferences

4

drawn from circumstantial evidence." (Id. at 14:14-15.) "Modern tort law permits [circumstantial] proof of causation." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1320 (9th Cir. 1995). Accordingly, Defendant has not shown that MacCollum and Fulghum are not qualified to testify on causation.

II. Theories of Liability

### A. Guard over the control panel

Defendant argues that neither of Plaintiffs' liability experts is qualified to testify that its aerial lift was defective because the lift lacked a guard to prevent Estrada's upper body from making contact with the control panel. (Mot. at 2:23.) MacCollum and Fulghum are sufficiently qualified to so testify. Their background and experience as safety engineers includes determining conceptually whether this safety feature was required.

MacCollum has over 55 years of experience as a safety engineer where "his job is to look at development work and anticipate safety hazards"; he authored a study for the Center to Protect Workers' Rights "involving design principles for construction equipment" where "he developed five design criteria which have been adopted by industry"; he inspected the aerial lift involved in the accident; has previously operated other aerial lifts; viewed a video depicting a person operating the same model lift involved in the accident; and has previously testified as an expert in a trial involving an aerial lift which also lacked a guard over the control panel. (Opp'n at 4:12-13, 4:21-23, 4:28, 5:1-2, 4:25-28, 4:18-20.)

Fulghum spent sixteen and a half years as "primary investigator for Cal-OSHA [Occupational Safety and Health Administration] investigating industrial accidents [before] retiring

5

in 2001"; currently provides consulting services "as a safety engineer for government, labor, and private industry in addition to litigation support work"; has worked on four other cases (three as lead OSHA inspector and one as an expert) involving aerial lifts manufactured by Defendant's competitor; has operated other aerial lifts; "is familiar with the machinery involved here"; "viewed a DVD of a functionality test of the model [] aerial lift involved in [this] accident[;] reviewed photographs of the accident site"; and inspected the subject aerial lift.  (Id. at 5:6-13, 19-21.)

Further, although neither MacCollum nor Fulghum have tested their opinion of the alternative design of a bar or guard over the control panel of the subject aerial lift, the "*Daubert* [factors are] flexible [] and [the lack of] testing[] is [not] dispositive." Dhillon v. Crown Controls Corp., 269 F.3d 865, 870 (7th Cir. 2001); (see Opp'n at 17:24-26, 21:6-8.)  Rather, the question is whether "the experts' testimony satisfies the other *Daubert* guideposts used to examine reliability of the methodology [such as] any evidence that the [theories] ha[ve] been favorably subject to peer review or generally accepted in the relevant communities."  Dhillon, 269 F.3d at 870.

MacCollum and Fulghum support their opinions by, *inter alia*, citing the American National Standards Institute ("ANSI") rule A92.5, which requires "protect[ing] [] the controls from inadvertent operation," and Cal-OSHA regulations, Title 8, section 3642(d), "which requires the presence of a guard to protect against accidental operation."[1]  (Opp'n at 13:5-11.)  The ANSI and OSHA provisions cited

---

[1] Title 8 of the California Code of Regulations, section 3642(d) provides, in pertinent part: "Any powered elevating work platform shall have both upper and lower control devices. Controls shall be plainly
(continued...)

by MacCollum and Fulghum support their opinions. See Milanowicz v. The Raymond Corp., 148 F. Supp. 2d 525, 533 (D.N.J. 2001) (where the court identified standards, such as OSHA and ANSI, as important indicia of reliability in evaluating expert testimony).[2]

### B. Remaining Theories

Defendant argues that MacCollum is not qualified to testify "that the toggle switches should be designed such that they resemble those used by some automobile manufacturers" and that this "opinion[] is not based on any tests or calculations." (Mot. at 5:5-7.) Defendant also contends that Fulghum is not qualified to testify "that the controls . . . should be placed in a different position" such that they have "maximum mobility and visibility" and that "the controls could be moveable or swing out" because "he cannot identify the optimum location" of the controls and Fulghum "has never seen an aerial lift with [controls that are moveable and swing out]." (Mot. at 5:5-6, 6:5-6, 8-9, 11-12.) Finally, Defendant also contends that Fulghum is not qualified to testify that "the [aerial lift's] foot switch should be positioned at a 45 degree angle." (Id. at 6:12-13.)

Plaintiffs have not shown how MacCollum and Fulghum have sufficient experience to give such expert opinions. Each witness supports his opinions with only a single, untested example of use of his design theory. MacCollum asserts that the toggle switches "are

---

[1](...continued)
marked as to their function and guarded to prevent accidental operation." Cal. Code Regs. Tit. 8, § 3642(d).

[2] MacCollum's opinion that "there is a problem with the design of the lift's controls" and Fulghum's opinion, that "the controls on the lift are defective" are necessarily subsumed within their theory that there should have been a bar or guard over the control panel. (Mot. at 5:2-5, 6:5-6.)

7

already in use in the automotive industry." (Opp'n at 10:27-28.) Fulghum asserts that a pivoted or wireless control panel is "commonly found in concrete boom trucks." (Id. at 13:25-26.) However, these examples are insufficient to satisfy the "*Daubert* guideposts used to examine [the] reliability of the methodology [such as] [] evidence that the [theories] ha[ve] been favorably subject to peer review or generally accepted in the relevant communities." Dhillon, 269 F.3d at 870. Therefore, MacCollum and Fulghum will not be allowed to offer opinions on the toggle switches, that the controls should be placed in a different position and should be mobile (pivoted or wireless), and that the foot switch should be positioned at 45 degrees.

## CONCLUSION

For the reasons stated, Defendant's motion is granted in part and denied in part.

Dated: March 9, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge